IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT LANCE MILLER, | : | Civil No. 1:23-CV-01461 |
| Plaintiff, | : | |
| v. | : | |
| PETE HEGSETH,[1] Secretary, United States Department of Defense | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is an appeal from a decision of the Merit Systems Protection Board ("MSPB" or "the Board") filed by Plaintiff Robert Lance Miller ("Miller") challenging the MSPB's decision affirming an administrative judge's decision affirming the Department of Defense's decision to remove Miller from employment as a police officer employed by the Pentagon Police Directorate, Pentagon Force Protection Agency ("PFPA"). (Doc. 17.) The PFPA removed Miller from employment as a police officer because he failed to meet the agency's medical standards on May 14, 2014. (Doc. 18, pp. 9–17.)[2] An administrative judge affirmed that decision on October 27, 2016. (Doc. 22, pp. 533–63.) The MSPB affirmed the administrative judge's decision on August 2, 2023. (*Id.* at

---

[1] Pete Hegseth was sworn in as the Secretary of Defense on January 25, 2025. The court substitutes him as a party pursuant to Fed. R. Civ. P. 25(d).

[2] For ease of reference, the court uses the page numbers contained in the CM/ECF header.

1

655–77.) Miller now seeks this court's review. For the reasons that follow, the appeal from the MSPB's decision will be denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[3]

Plaintiff Robert Miller was employed by the PFPA at Raven Rock Mountain Complex in Adams County, Pennsylvania as a police officer. (Doc. 26, p. 2; Doc. 31, p. 7.) Miller suffered a knee injury while performing a work-mandated physical fitness test on November 2, 2011. (Doc. 18, p. 150.) Miller eventually had surgery to address this injury. (*Id.* at 151–52.) During this time period, Miller applied for workman's compensation with the Office of Workman Compensation Programs ("OWCP") based on this injury. (Doc. 19, p. 412.)

After recovering from his surgery and receiving treatment, Miller was cleared to return to full duty by the PFPA on March 5, 2012. (Doc. 18, p. 157.) Throughout the summer and fall of 2012, Miller presented for an independent medical examination, as required by OWCP, as well as completing and passing the annual medical examination required by the PFPA. (Doc. 18, pp. 158, 162–86; Doc. 19, pp. 64–66.)

On October 9, 2012, OWCP awarded Miller workman's compensation for the period of June 25, 2012, through March 14, 2013. (Doc. 19, pp. 435–37.)

---

[3] The court has only included those facts which are necessary to resolve the instant appeal. This is not a conclusive determination of relevant facts, simply the facts necessary to provide context for the instant appeal.

OWCP notified the PFPA that Miller was not medically able to do his job duties and the PFPA placed Miller in medically not cleared status and transferred to light duty. (Doc. 18, p. 169.) Miller was evaluated by PFPA's medical review officer on October 26, 2012. (*Id.* at 170.) On November 9, 2012, the PFPA's medical review board reviewed Miller's case and concluded he did not meet the agency's musculoskeletal system standard. (*Id.* at 134.) The PFPA notified Miller of this decision on January 7, 2013, which he received on January 23, 2013. (*Id.*)

On March 26, 2013, Miller was evaluated by Dr. Draper relating to his OWCP claim. (*Id.* at 185–89.) Based on this evaluation, on April 1, 2013, the OWCP claims examiner stated that "the claimant is cleared for unrestricted full duty." (*Id.* at 183.) This examination was submitted to the PFPA medical review board, which reconsidered Miller's case, and again decided that Miller failed to meet the PFPA's musculoskeletal system standard. (*Id.* at 134.) The PFPA tried to find a reasonable accommodation, however, the PFPA ultimately notified Miller of its intent to remove him from his position for failure to meet medical standards. (*Id.* at 100–03.) The PFPA issued a final decision removing Miller from his employment on May 13, 2014. (*Id.* at 9–12.)

On June 16, 2014, Miller timely appealed the PFPA's decision, challenging the merits of his removal for failure to meet medical standards and raising the affirmative defense of disability discrimination. (*Id.* at 2–7.) After over two years

of litigation and a hearing before an administrative law judge, Honorable Michael T. Rudisill, Administrative Law Judge for the Merit Systems Protection Board, a decision was issued affirming the agencies' action on October 27, 2015.  (Doc. 22, pp. 533–63.)  Judge Rudisill held that the PFPA had "presented competent and persuasive evidence in support of its non-disciplinary removal charge."  (*Id.* at 540.)  Judge Rudisill specifically disagreed with Miller's arguments that he could perform the duties of his position, relying on the evidence of successful physical and medical examinations during May through October 2012.  (*Id.* at 541–53.)  Judge Rudisill then discussed the differing medical opinions and the weight he gave to each opinion, giving greater weight to the medical opinions that based their conclusions on the position description for a PFPA police officer or knowledge of the working environment, and lesser weight to the opinions that relied on Miller's description of the working environment.  (*Id.* at 543–45.)

   Judge Rudisill also held that Miller had not met his burden of proving an affirmative defense that he was discriminated against due to a disability because the record did not show that Miller was either an individual with a disability or that the PFPA regarded him as disabled, as required by applicable regulations.  (*Id.* at 548–51.)  Additionally, regarding further affirmative defenses, Judge Rudisill held that Miller had not shown a disparate treatment affirmative defense because there was no evidence in the record that "his removal was the result of discrimination,

4

but [he] merely made a bald assertion." (*Id.* at 552.) On Miller's final affirmative defense, Judge Rudisill held that the PFPA did not violate Miller's due process right because the agency official did not merely "rubber stamp" a proposal of removal notice, but the agency official understood he had authority to impose a lesser sanction. (*Id.* at 553, 554.)

Finally, Judge Rudisill considered Miller's argument that he was removed from his position in violation of his restoration rights.[4] (*Id.* at 554.) Judge Rudisill specifically addressed, and rejected, Miller's argument that "a determination of the Office of Worker's Compensation Programs ("OWCP") that an individual is fully recovered from a compensable injury is binding on the [Merit Systems Protection] Board." (*Id.* at 555.) Judge Rudisill held that a determination of the OWCP is not binding here, where the "employee is removed based solely on his failure to meet agency medical standards[.]" (*Id.*) Specifically, Judge Rudisill noted "[t]he agency did not remove [Miller] in 2014 because of his compensable knee injury but rather because of the subsequently diagnosed osteoarthritis which was deemed recurrent, and, as a consequence, a violation of the agency's musculoskeletal system medical standard." (*Id.*)

---

[4] The Federal Employees Compensation Act ("FECA") "provides a comprehensive remedy to a federal employee for injuries 'sustained while in the performance of his duty.'" *Heilman v. United States*, 731 F.2d 1004, 1109 (3d Cir. 1984)(citing 5 U.S.C. § 8102). The FECA contains various protections for employees who are injured while at work, including "the right to resume his former or an equivalent position" if the injury is overcome within one year. 5 U.S.C. § 8151. This is commonly called an employee's "restoration right."

5

On November 29, 2016, Miller filed a petition for review with the MSPB. (*Id.* at 564.)  On August 2, 2023, the MSPB issued its final order, denying the petition for review, modifying the analysis of whether the agency proved the charge against Miller and the analysis of whether Miller proved his affirmative defense of disability discrimination and restoration right, and ultimately affirming the initial decision.  (*Id.* at 656.)  Miller's first argument was that Judge Rudisill applied the wrong standard in holding that the PFPA had sustained its charge against him.  (*Id.* at 662.)  After discussion of a clarification of the law which occurred while the appeal was pending, the MSPB held that Judge Rudisill did apply the wrong standard, but that the MSPB did not need to remand because the record was fully developed and the MSPB itself could apply the correct standard.  (*Id.* at 662, 663.)  After reviewing the medical evidence anew, the MSPB affirmed Judge Rudisill's determination that the PFPA had proved its charge that Miller failed to meet medical standards.  (*Id.* at 666.)

Regarding Miller's affirmative defense of disability discrimination, the MSPB disagreed with Judge Rudisill on one aspect of the analysis and held that Miller was disabled under the applicable regulations, but the MSPB ultimately concluded that Miller had not shown he was a qualified individual, specifically, that he could perform the essential functions of his position with or without reasonable accommodation.  (*Id.* at 667.)  The MSPB found that Miller's "knee

condition precludes him from performing such emergency duties [as required by his position] at a satisfactory level." (*Id.*)  Next, the MSPB upheld Judge Rudisill's decision regarding Miller's due process defense. (*Id.* at 668–70.)

Finally, the MSPB addressed Miller's argument that his removal was based on his work-related injury, and thus, in violation of his restoration rights. (*Id.* at 671.)  The MSPB agreed that the record was "not entirely clear whether his failure to meet medical standards, and subsequent removal, was due to a work-related injury, a non-work related condition, or both." (*Id.*)  Ultimately, the MSPB noted that Miller had never requested restoration during the relevant time period, and "regardless of whether the appellant's removal was substantially related to his compensable injury, the Board would lack jurisdiction over any potential restoration claim in the context of the instant appeal." (*Id.* at 672.)

Miller initiated the instant review by filing a complaint on September 1, 2023.  On July 16, 2024, the court granted Plaintiff's oral motion to bifurcate this proceeding, so that the court could first address the appeal from the MSPB determination, and then proceed with a trial de novo of the disability discrimination claim. (Doc. 16.)  Miller filed an amended complaint on September 30, 2024, raising an appeal from the MSPB's final decision (Count I), as well as a request for a trial de novo on a claim under the Rehabilitation Act of 1973 (Count II).  Defendant filed the administrative record on the same day. (Docs. 18–22.)

7

Miller filed a brief in support of his appeal on November 15, 2024.  (Doc. 26.) Defendant filed his brief in opposition on December 30, 2024.  (Doc. 31.)  Miller filed a reply brief on January 21, 2025.  (Doc. 35.)  Therefore, the appeal is ripe and ready for disposition.

## JURISDICTION AND VENUE

This court has jurisdiction pursuant to 5 U.S.C. § 7703(b)(2) because this is a "mixed case" which contains "allegations of employment discrimination as well as allegations of procedural violations under the [Civil Service Reform Act] CSRA." *Makky v. Chertoff*, 541 F.3d 205, 211 (3d Cir. 2008); *see also Perry v. Merit Sys. Prot. Bd.*, 582 U.S. 420, 436 (2017).  Venue is proper in the Middle District of Pennsylvania under 28 U.S.C. § 1391(b) because all acts or omissions giving rise to the claim occurred within the Middle District of Pennsylvania.

## STANDARD OF REVIEW

The court's review of a final decision from the Merit Systems Protection Board is limited by 5 U.S.C. § 7703(c), which provides that:

> [t]he court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be –
>
> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;
>
> (2) obtained without procedures required by law, rule, or regulation having been followed; or
>
> (3) unsupported by substantial evidence;

      except that in the case of discrimination brought under any section referred to in subsection (b)(2)[5] of this section, the employee or applicant shall have the right to have the facts subject to trial de novo by the reviewing court.

*Id.* As made clear by the statute, the court's review is limited to the administrative record and is "subject to a more deferential standard established by statute." *Vanyan v. Hagel*, 9 F.Supp.3d 629, 642 (E.D. Va. 2014). The appellant has the burden of showing the MSPB's decision is arbitrary and capricious or not supported by substantial evidence. *Harris v. Dep't of Veterans Affs.*, 142 F.3d 1463, 147 (Fed. Cir. 1998). A decision is arbitrary and capricious if it does not have a rational basis in law. *Davenport v. Spencer*, 391 F.Supp.3d 366, 376 (M.D. Pa. 2019)(citing *Rand v. Geithner*, 730 F. Supp. 2d 118, 125 (D.D.C. 2010)). "[T]he arbitrary and capricious standard is extremely narrow and allows the Board wide latitude in fulfilling its obligation to review agency disciplinary actions." *United States Postal Service v. Gregory*, 534 U.S. 1, 6–7 (2001). A decision is supported by substantial evidence if there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Simpson v. Off. of Pers. Mgmt.*, 347 F.3d 1361, 1364 (Fed. Cir. 2003).

---

[5] The sections referred to 5 U.S.C. § 7703(b)(2) are "section 717(c) of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-16(c)), section 15(c) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 633a(c)), and section 16(b) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 216(b))[.]"

## DISCUSSION

Despite stating that this court has jurisdiction over this case pursuant to 5 U.S.C. § 7703(b)(2), Miller presents two issues for the court: "1) [w]hether the Merit Systems Protection Board had, and this District Court has, subject matter jurisdiction over the **issue** of whether Officer Miller was able to perform unrestricted, full PFPA police duties?" and "2) [i]n the alternative, assuming the Board had, and the District Court has, such subject matter jurisdiction, whether Officer Miller failed to meet the PFPA's Medical Standard for the Musculoskeletal System?" (Doc. 26, pp. 1, 2.) The court will address each argument in turn.

### A. Jurisdiction of MSPB and this Court

First, Miller argues that the MSPB and this court do not have jurisdiction to "challenge" the OWCP's determination that Miller was cleared for full duty. (*Id.* at 10.) Miller relies on *McDougal-Saddler v. Herman*, 184 F.3d 2017 (3d Cir. 2019) to argue that 5 U.S.C. § 8128(b) precludes any other official, including administrative judges, members of the MSPB, and U.S. District Courts, from reviewing a decision by the Secretary of Labor or his subordinates. (*Id.* at 11, 12.) Although not expressly laid out in his brief, it appears that it is Miller's position that the decision to terminate Miller's employment based on failure to meet medical standards "reviews" or overrules the OCWP Claims Examiner's decision that Miller was cleared for full duty.

Defendant responds that Miller has failed to appropriately challenge the MSPB's decision because "§ 8128(b) was not intended to preclude an Agency from making personnel management decisions independent of OWCP's claims administration process." (Doc. 31, pp. 31, 32.) Further, the Agency contends that "[i]n enacting 5 U.S.C. § 8128(b), Congress did not contemplate divesting federal agencies within the Executive Branch of their authority to make decisions regarding whether an individual is qualified for the job they hold." (*Id.* at 32.)

In reply, Miller notes that the Agency does not cite any authority for its arguments. (Doc. 35, p. 1.) Miller then points the court to *Williams v. United States Postal Service*, 84 M.S.P.R. 374, 377 (1999) in which the MSPB held that, in the context of reviewing a restoration rights claim, the Board may not review the OWCP's determination that an employee is fully recovered from a work-related injury. (*Id.* at 5.) Miller contends that this case shows that the OWCP claims examiner's determination "trumps" the determination by the PFPA that Miller does not meet agency medical standards. (*Id.* at 1.)

5 U.S.C. § 8128(b) provides that "[t]he action of the Secretary or his designee in allowing or denying a payment under this subchapter is–(1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a court by mandamus or otherwise." 5 U.S.C. § 8128(b). A review of the statute reveals the

11

application of this section. First, the subchapter at issue involves "compensation for disability or death of employee[,]" and provides the various standards under which the Secretary of Labor determines whether an employee is entitled to compensation. 5 U.S.C. §§ 8101 *et seq*. As stated in § 8128(b), such determinations, i.e. "the making or denying of compensation awards[,]" are not reviewable by district courts or the MSPB. *Minor v. Merit Sys. Protection Bd.*, 819 F.2d 280, 283 (Fed. Cir. 1987); *see also McDougal-Saddler v. Herman*, 184 F.3d 207, 214 (3d Cir. 1999). Stated differently, "[s]ection 8128 provides the Secretary with unreviewable discretion in "'*allowing* or *denying* a payment.'" *United States v. Vetti*, 681 F.Supp. 986, 991 (D. Conn. 1988)(emphasis in original).

However, the Federal Circuit has held that § 1828(b) "does not close the door on review of all decisions that may overlap or touch on a DOL benefits determination." *Kerrigan v. Merit Sys. Protection Bd.*, 833 F.3d 1349, 1353 (Fed. Cir. 2016) (citing *Minor*, 819 F.2d at 283.) Indeed, the Federal Circuit in *Kerrigan* held that the Board's jurisdiction was not barred by § 8128(b) when jurisdiction "stems from challenges that are separate and distinct from a simple appeal of benefits denial[.]" *Id*. *See also Swanson v. United States Postal Service*, 13 Fed. App'x 979, 979 (Fed. Cir. 2001) (Swanson argued the OWCP determined she was "fully recovered" and the MSPB was without authority to hold she was not recovered, but the Federal Circuit held that § 8128(b) "does not support Swanson's

argument because [§8128(b)] relates only to the finality of the Department of Labor's decisions on compensation awards; the decisions of the OWCP do not bind the board or the agency when they act within their own statutory authority.")

Additionally, the case offered by Miller is distinguishable from the case at hand. In *Williams*, the plaintiff "assert[ed] that he had a right to restoration to duty as a partially recovered employee, under 5 U.S.C. § 8151 and 5 C.F.R. §353.301(d)." *Williams*, 84 M.S.P.R. at 377. The MSPB explained that "in order to establish Board jurisdiction over his appeal, the appellant must show that he is partially recovered from a compensable injury, and that he was denied restoration by the agency after requesting it." *Id.* Then, the MSPB explained, in the case before it, the plaintiff "had an injury for which he was receiving compensation, that he requested restoration, and that his request was denied." *Id.* Under those facts, the MSPB affirmed the administrative judge's determination that the MSPB could not review "OWCP's determination that the appellant is fully recovered from the work-related portion of his injury[.]" *Id.*

Here, Miller was challenging his removal from the Agency for failure to meet medical qualifications. (Doc. 22, p. 655.) Miller was not challenging the OWCP's determination that he was fit to return to duty and was not asking the MSPB to rule on the propriety of that determination. Judge Rudisill denied Miller's restoration claim, and the Board likewise denied the restoration claim

13

because it found "nothing in the record to indicate that [Miller] made a request for restoration during this time period." (Doc. 22, pp. 554–56, 672.) Accordingly, because Miller was not challenging an award or denial of compensation, § 8128(b) does not operate in this context to bar the Board from deciding this appeal.

### B. PFPA's Medical Standards

Miller argues that the PFPA was required to show Miller was a direct threat to himself or others to meet its burden of proving he did not meet the PFPA musculoskeletal medical standard. (Doc. 26, pp. 13–17.) Defendant argues that this argument has been waived because it is the first time in the nearly seven-year span of this case that Miller has raised this argument. (Doc. 31, p. 33.) Miller did not reply to this argument. After review of the administrative record, the court agrees and declines to rule on this challenge to the MSPB's decision. *See Bosley v. Mert Sys. Prot. Bd.*, 162 F.3d 665, 668 (Fed. Cir. 1998) ("A party in an MSPB proceeding must raise an issue before the administrative judge if the issue is to be preserved for review in this court.")[6]

---

[6] To the extent that Miller argues that this court and the MSPB should not defer to the PFPA's medical standards due to *Loper Bright* overruling *Chevron* deference, the court will not address this argument because it declines to address the merits of whether the PFPA medical standards were properly applied. (Doc. 26, p. 7)(citing *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024)).

## CONCLUSION

Miller's appeal from the MPSB's decision affirming the PFPA's termination of his employment is denied. An order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: March 12, 2025